**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Vermont Environmental Board,
Plaintiff                          }
                                   }
v.                                 }     Docket No. 97-6-01 Vtec
                                   }
Lawrence W. and Barbara Young,     }
Respondents.

**Decision and Order on Cross-Motions for Summary Judgment**

On June 14, 2001, the Environmental Board issued an administrative order pursuant to 10 V.S.A. ' 8008, asserting violations of Condition 5 of Respondents= Land Use Permit #6F0518-EB. Respondents requested a hearing in Environmental Court. Reference to > Respondent= in the singular refers to Respondent Lawrence W. Young. Respondents are represented by Charles F. Storrow, Esq.; the Environmental Board is represented by John H. Hasen, Esq. The parties have filed motions for summary judgment on the issue of whether any violation existed, and not as to any issues of penalty. The following facts are undisputed unless otherwise noted.

Since the mid-1970's, Respondents had used their 2.75-acre parcel near Route 104 in Fairfax as a base of operations for their excavating and snow removal business: L.W. Young Excavating, Inc. The parcel is accessed from Route 104 by a right-of-way across property owned by the First Baptist Church of Fairfax. A garage/shop building and a residential duplex building were located on the parcel; Respondents had resided in the residence on the parcel. Respondents also own an approximately 40-acre parcel to the south of (behind) the shop parcel, which is in use as a hayfield and is hayed by Respondents= son, Lawrence Young, Jr., who owns a 20-acre parcel with his residence next to the hayfield parcel, on which he raises beef cattle. Ms. Colleen Steen lives adjacent to the shop parcel, and over the years since the mid-1970s had been distressed by the noise, fumes and dust from Respondents= operation of their excavating business from the parcel. The level of activity had increased in the 1990s to a level she considered A intolerable.@

In 1999 Ms. Steen requested a jurisdictional opinion from the District Coordinator for the District 6 Environmental Commission. The jurisdictional opinion concluded that Respondents= 1977 construction of the shop/garage building on the parcel and their 1988 addition of an office to that building had required an Act 250 permit. As a result of the issuance of this opinion, Respondents on October 28, 1999 applied for Land Use Permit #6F0518, which was issued by the District Environmental Commission #6 on February 25, 2000. That decision allowed Respondents to continue to use the parcel for their excavating business but imposed limitations on its hours of operation and numbers of truck trips, and required the planting of trees to screen the activities from the neighbor=s property.

Ms. Steen appealed the issuance of the permit to the Environmental Board. Respondents cross-appealed with respect to two conditions. While the appeal was pending before the Board, Ms. Steen and Respondents entered into a land use agreement, the purpose of which was to settle the dispute over the use of Respondents= property and the private parties= interest in the proceedings before the Environmental Board. Respondents agreed to A cease using the Site for the operation of their business on or by May 1, 2001@ and to restrict the future use of the property. The agreement specifically defined this concept as follows:

This means that all commercial and construction vehicles, machinery, equipment and materials shall be removed from the Site, and that the Youngs will not thereafter park, store and/or maintain any commercial or construction vehicles, machinery, equipment and/or materials at the Site.

The agreement also specifically allowed A the use of construction vehicles and equipment on the Site in connection with the removal of the garage/shop structure and the re-development of the Site as authorized in paragraph 2 below . . . .@ Paragraph 2 listed the acceptable future uses of the site, including single-family dwelling, two-family dwelling, up to three-unit apartment house; professional services office; personal service establishment; business offices; home occupations; and accessory use/structure. Thus, the requirement to cease using the property for Respondent= s business was defined to refer to the excavating and construction contractor business. It did not preclude Respondents or others from using the property for the businesses listed in Paragraph 2, and did not mention agricultural operations at all.

In turn, Ms. Steen agreed that Respondents could use the property until May 1, 2001 on terms less restrictive than those allowed by Permit #6F0518. Respondents and Ms. Steen agreed to request the Environmental Board to issue a modified land use permit reflecting their land use agreement, which they did by submitting stipulated proposed findings of fact and conclusions of law, and a proposed stipulated order and permit. Among other things, the proposed permit includes the condition that the A Permittees shall cease using the Site for the operation of their business on or by May 1, 2001. @

On November 1, 2000, the Environmental Board issued its decision and Land Use Permit #6F0518-EB, amending Permit #6F0518 generally in accordance with the agreement between Respondents and Ms. Steen. The decision expresses a strong policy preference for negotiated, non-adversarial settlements, and states, A [i]n this decision, the Board incorporates a settlement proposal filed by the parties to modify Land Use Permit #6F0518 . . . by deleting four of the conditions in the Permit, modifying two conditions, and terminating the Project as of May 1, 2001. The last full paragraph on page six of the decision states:

For the limited purpose of furthering the parties= settlement, as noted above, the Board adopts the Commission= s findings and conclusions. In accordance with the parties= proposed resolution, however, the Board concludes that some of the mitigating steps required by the Commission may be superseded by the overriding mitigation agreed upon by the parties B that the Permittees shall cease their business operations at the Project site on or before May 1, 2001. The Board will therefore modify Conditions 12 [paving the driveway], 14 [planting evergreens] and 19 [landscaping] accordingly.

As issued by the Board, Condition 5 of the permit stated that the A Permittees shall cease all business operations at the Project site on or before May 1, 2001, @ rather than using the phrase A their business operations @ as contained both in the private parties= settlement and in the Board= s discussion on page six of the decision.

Between November 2000 and May 1, 2001, Respondents purchased another parcel of land in Fairfax, made changes to a barn located on that parcel, and obtained zoning approvals to use the new parcel for their excavating business in lieu of the shop parcel at issue in this case. On May 5, 2001, Respondents had a carpenter remove the windows in the garage/shop building on the shop parcel to install them in the barn on the new parcel.

The Administrative Order at issue in the present case alleges that Respondents violated Condition 5, describing the violations as: A [a]fter May 1, 2001, on several separate occasions during the months of May and June 2001, Respondents have used the Project site for their business operations or have permitted others to use the Project site for business operations, including the moving and storage of equipment. @ However, in the summary judgment motion,

the Board does not claim that Respondents themselves used the property for their own business operations after May 1, 2001. Rather, the specific violations alleged are 1) the use of the property by Desautels Paving, Inc. (Desautels) for overnight storage of one or two trucks and paving or curbing equipment during two paving projects conducted by Desautels nearby, and 2) the use of the property by Respondent Lawrence Young= s son A to support his agricultural operations@ on an adjacent lot.

## Use of the Parcel by Desautels Paving, Inc.

Desautels Paving, Inc. is a paving contractor unrelated to Respondents or their business and in which Respondents have no ownership or other interest. In May 2001, Desautels was performing a paving and curbing project for the State on nearby Route 104. Beginning approximately May 7, 2001, and continuing to about May 30, 2001, Desautels used the parcel at issue in this case, initially without Respondents= knowledge or permission, to store overnight one or two dump trucks towing flatbeds with associated pieces of paving equipment, which Desautels was using for the Route 104 paving and curbing project. The trucks and equipment left the site usually in the early morning and returned usually in the late afternoon. Shortly after Desautels= use began, an agent of Desautels informed Respondent Barbara Young of its overnight use of the property. Respondents did not at that time oppose Desautels= overnight use of the property for its paving equipment during the pendency of the Route 104 paving job. Respondents took no role in Desautels= business operation, and received no payment or other material consideration for Desautels= use of the property. The Board argues that Respondents received consideration in the form of the sort of general Agood will@ engendered by a favor, but supplied no affidavit supporting that argument.

Sometime in late May, 2001, Respondent became aware that Ms. Steen had complained to the Environmental Board about Desautels= use of the property during the Route 104 paving project. However, because Desautels had stopped using the property by the time Respondent became aware of that complaint, he took no further action and did not communicate at that time with Desautels. Approximately a week to ten days later, in early to mid-June, 2001, Desautels resumed its use of Respondents= property to store equipment overnight during another, private, paving project nearby. That use occurred on June 13 and 14, 2001. Respondents immediately requested Desautels not to park any trucks or other equipment on the property, and Desautels complied. No violation of the permit is alleged thereafter.

Condition 5 requires Respondents to Acease all business operations at the Project site on or before May 1, 2001.@However, we must read that permit condition in conjunction with the Board= s complete decision and order, in which the Board discusses its decision as incorporating the private parties= agreement. In that context, in which the parties= agreement defines what it means to Acease business operations,@ and in which the Board= s own decision makes two references that Respondents Ashall cease their business operations@ on the site, we must incorporate that definition to understand the Board= s order. Certainly, any action of a third party done at the direction of Respondents or by explicit permission of Respondents or in return for any compensation to Respondents should be attributed to Respondents regarding this violation. However, the mere fact than an unrelated third party was engaged in an unrelated business operation, and stored its equipment overnight at the property, cannot be attributed to Respondents under the circumstances of this case[1].

## Use of the Property by Respondent Lawrence W. Young=s Son

The Administrative Order also alleges that Respondent=s son used the property Ato support his agricultural operations@ in violation of Condition 5. Respondent= s son farms his own parcel and cuts hay on Respondents= 40-acre parcel contiguous to the parcel subject to the Permit. Nothing about Condition 5 of the permit prohibits Respondents or Respondent= s son from coming onto the property; the proscription is for Abusiness use,@ defined in the Agreement as

requiring the removal of Aall commercial or construction vehicles, machinery, equipment and/or materials.@

Material facts are in dispute as to whether Respondent= s son came onto the property with any commercial or construction vehicles, machinery or equipment, or whether he came onto the property with agricultural equipment, or only with his personal vehicle. The evidence of his coming onto the property from Ms. Steen= s affidavit appears to be that she observed his A maroon pickup@ on the property on May 2, and on June 13, 2001, and on A several occasions@ unidentified as to date. The remaining indicia of Respondent= son= s business use of the property in Ms. Steen= s affidavit appears to be that she heard A banging, clanking, hammering metal, and moving equipment@ in the garage/shop on May 1, June 11 and June 15, and not in the field; however, on those dates her affidavit shows no links with Respondent= s or Respondent= s son= s presence at the garage/shop.

Material facts are therefore in dispute as to when or whether Respondent= s son used the property, and whether his use, if any, fell within the proscription for Respondents= A business operations@ on the property. If the only evidence of such use of the property is the sound of A clanking,@ it may well not be sufficient to prove the violation, but that cannot be determined from the mere affidavits.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that as to the allegations of violation due to the Desautels Paving use of the property, Respondents= Motion for Summary Judgment is GRANTED and judgment is entered in favor of Respondents that a violation has not occurred on that basis. 10 V.S.A. ' 8012(b)(1). As to the allegations of violation due to the use of the property by Lawrence W. Young, Jr., both Motions for Summary Judgment are DENIED as material facts are in dispute; therefore, the Administrative Order is not reversed at this time. 10 V.S.A. ' 8012(b)(1). We will hold a telephone conference on Monday, February 11, 2002 at 9:00 a.m., to discuss setting a hearing on the remaining aspects of the Administrative Order.

Done at Barre, Vermont, this 5th day of February, 2002.

_____
Merideth Wright
Environmental Judge

---

**Footnotes**

[1]   This decision is based on the incorporation of the private parties' Agreement into the Board's decision, and does not address whether a condition similar in wording to Condition 5 might include the actions of an unrelated third party on a permittee's property, in the absence of the language and definitions in the Agreement.